IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MERRY WARNER, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>PIONEER AUTO SALES )<br>AND LEASING, INC. )<br>      Defendant. ) | CASE NO. 3:10-CV-023 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO PIONEER'S MOTION FOR SUMMARY JUDGMENT**

**I. NATURE OF PROCEEDING**

This is an action in which the Plaintiff, Merry Warner ("Warner"), alleges that her termination by the Defendant, Pioneer Auto Sales and Leasing, Inc., ("Pioneer"), was a retaliatory discharge in violation of Title VII, specifically 42 U.S.C. Section 2000e-3(a) and that Pioneer is liable for hostile work environment. Pioneer has filed a Motion for Summary Judgment in this case and Plaintiff files her Response in Opposition.

**II. STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS**

Plaintiff's reference in this statement are to the depositions of Merry Warner, Brent Schafer and Chris Sarna along with Exhibits which were part of these depositions. Excerpts of these depositions and Exhibits are attached to Plaintiff's Response.

Merry Warner was hired at Pioneer in August 2007. (Warner Dep. at 5, L.10-11). Merry Warner was hired in as Office Manager of the Osceola store. (Warner Dep. at 5, L23-25). Merry Warner's job duties included taking payments, phone calls, collections, bank deposits. (Warner Dep. at 6. L.9-20). The only other employees who worked with Warner in the Osceola office was Tom

1

Sisk who worked in vehicle maintenance and Sonny Balser a car salesman. (Warner Dep. at 7, L.7-11). Pioneer is an auto leasing company. (Warner Dep. at 7, L.18-19). There was one computer in the Osceola office at Merry Warner's desk. (Warner Dep. at 9, L.7&10, at 17, L.19-22). Merry Warner was never written up or reprimanded. (Warner Dep. at 11, L.12). Chris Sarna showed Warner an offensive cartoon about Barbie. (Warner Dep. at 18, L.2-10, Warner Dep. Exhibit 1). Merry Warner believes Exhibit 1 was sexual harassment. (Warner Dep. at 20, L.2-5). Merry Warner complained to Sonny Balser about Chris Sarna showing her the offensive e-mail. (Warner Dep. at 20, L.16-18). Merry Warner complained to Brent Schafer about the offensive e-mail. (Warner Dep. at 21, L.12-17). Merry Warner complained to Brent Schafer that Chris Sarna was asking her out. (Warner Dep. at 21, L.20-25). Brent Schafer advised Merry Warner after she complained that he would speak to Chris Sarna. (Warner Dep. at 22, L.11-16). Brent Schafer told Merry Warner that Chris Sarna does this type of harassment to everyone. (Warner Dep. at 22, L.19-20). Merry Warner found additional offensive e-mails while employed at Pioneer. (Warner Dep. at 25, L.9-12, Warner Dep. Exhibit 2). Chris Sarna also forwarded e-mails to Merry Warner's home. (Warner Dep. at 31, L.2-3). Sonny Balser also showed her offensive e-mails that Merry Warner believed was sexual harassment. (Warner Dep. at 37, L.14-16, Warner Dep. Exhibit 4). Chris Sarna gave Merry Warner additional offensive e-mails. (Warner Dep. at 33, L.14, Warner Dep. Exhibit 3). Chris Sarna is the Assistant Manager at Pioneer employed in the Plymouth Office. (Sarna Dep. at 5, L.4). Chris Sarna is an Assistant Manager at Pioneer who helps to supervise the Pioneer stores. (Sarna Dep. at 6, L.1-25). Chris Sarna and Brent Schafer are two principal managers at Pioneer. (Sarna Dep. at 8, L.1-4). The Osceola store has only two offices, a sales office and a business office. (Sarna Dep. at 9, L.23-24). There was just one computer located in the Osceola store, located in business office. (Sarna Dep.

2

at 24, L.23-24). All the Pioneer computers were backed up to the server located in Plymouth. (Sarna Dep. at 11, L.17-19). There was no company employee handbook during the years 2007-2008. (Sarna Dep. at 15, L.14-16). Chris Sarna had no knowledge of written policies at Pioneer as to reporting of sexual harassment. (Sarna Dep. at 16, L.18-24, at 17, L.14-15). There was only one computer at the Osceola office at Pioneer which was at Merry Warner's desk. (Sarna Dep. at 21, L.10-13). Sonny Balser, who worked at the Osceola office, as a sales person also used the computer at Merry Warner's desk. (Sarna Dep. at 22, L.1-1-8). Merry Warner's responsibilities did not change as Office Manager. (Sarna Dep. P.23, L.23, at 24, L.11). There was not written evaluation of employees at Pioneer. (Sarna Dep. at 24, L.6-8). Chris Sarna did not either verbally or in writing give a warning to Merry Warner as to her job performance during the time she was employed at Pioneer. (Sarna Dep. at 25, L.14-19). Chris Sarna kept in contact with Merry Warner through instant messaging. (Sarna Dep. at 26, L.12-16). As to the instant messaging sent from Osceola to the other Pioneer offices, there was no definite way as to whether Merry Warner sent the message or if Sonny Balser did. (Sarna Dep. at 39, L.18-23). The instant messages from the Osceola office could be from Merry Warner or Sonny Balser and there is no way to determine which entry is from Merry Warner or Sonny Balser unless the person has used their name. (Sarna Dep. at 40, L.4-18, at 41, L.13-17). The instant message from Osceola at 1:27:09 states that they are from Sonny Balser to Chris Sarna. (Sarna Dep. at 47, L.5-9, Sarna Dep. Exhibit 2). Some one could send an instant message to another office at Pioneer and there was no way to know exactly who was sending the message. (Sarna Dep. at 44, L.23, P.45, L.2). Crossed out message entries on Exhibit 2 were between Sonny Balser and Chris Sarna. (Sarna Dep. at 45, L.6-21, Sarna Dep. Exhibit 2). Chris Sarna did not know of a specific report that generated at Pioneer that would keep track of Merry Warner's use of software used by

3

Pioneer. (Sarna Dep. at 51, L.23 to at 52, L4). Brent Schafer is Vice-President of Pioneer. (Schafer Dep. at 5, L.11-12). Brent Schafer does supervision of all the Pioneer stores. (Schafer Dep. at 5, L.18-21). There was no Pioneer employee handbook in 2007 or 2008. (Schafer Dep. at 14, L.21-25). There were no written policies for the Pioneer employees in 2007 or 2008. (Schafer Dep. at 15, L.1-3). There were no written employee policies in 2007 or 2008 at Pioneer with regard to sexual harassment. (Schafer Dep. at 16, L.1-4). There was no system of written evaluations of employees at Pioneer. (Schafer Dep. at 18, L.17-20).

There was no written warnings as to Merry Warner. (Schafer Dep. at 19, L.10-11). There is no written documentation as to Merry Warner's performance. (Schafer Dep. at 25, L.1-2). Merry Warner received a $1,000 bonus while employed at Pioneer. (Schafer Dep. at 29, L.5-13, at 30, L.19-25). Brent Schafer never disciplined Merry Warner. (Schafer Dep. at 36, L.24-25, at 37, L1-3).

Chris Sarna continuously asked Merry Warner out on a date while she was employed at Pioneer. (Warner Dep. at 132, L.7-15, at 130, L.1-9). Exhibit 9 of Warner Deposition is a calendar prepared by Merry Warner. (Warner Dep. at 128, L.22-25). On January 3, 2008 Merry Warner told Sonny Balser about Chris Sarna's behavior toward her. (Warner Dep. at 131, L.18-25). At least every other day and every weekend Chris Sarna would ask Merry Warner out on a date, which Merry Warner refused. (Warner Dep. at 132, L.1-15). On January 7, 2008 Merry Warner wrote on her calendar and told Chris "no way" as to his asking her out. (Warner Dep. at 132, L.16-17, Warner Dep. Exhibit 9). On January 15, 2008 Merry Warner noted on her calendar that Chris Sarna told her he wished he was her boy friend. (Warner Dep. at 133, L.12-15, Warner Dep. Exhibit 9). On January 22, 2008 Merry Warner noted on her calendar that she complained to Brent Schafer about Chris Sarna constantly asking her out on a date. (Warner Dep. at 133, L.18-24, Warner Dep. Exhibit

4

9). Chris Sarna contacted Merry Warner every Friday to ask her out. (Warner Dep. at 134, L.18-19). Chris Sarna kept asking Merry Warner how her love life and sex life was. (Warner Dep. at 136, L. 16-17). On February 14, 2008 Chris Sarna told Merry Warner: " gee Mary I wish I could get into your pants. How's your love life. I.. Hate my wife. I'm not happy. Come on, say you're going to come and see me this weekend and watch me play." (Warner dep at 136, L . 7-10).

On August 20, 2008 Merry Warner complained to Brent Schafer about the e-mail she saw. (Warner Dep. at 160, L.2-9). On May 28, 2008 Merry Warner complained again to Brent Schafer about Chris Sarna asking her out. (Warner Dep. at 150, L.8-15, Warner Dep. Exhibit 9). On August 20, 2008 Merry Warner complained to Brent Schafer about the e-mail she saw. (Warner Dep. at 160, L.2-9). On September 25, 2008 Merry Warner attempted to call Brent Schafer again but he was too busy to talk with her, which she noted on her calendar. (Warner Dep. at 163, L.13-23, Warner Dep. Exhibit 9) Sonny Balser would pretend to be Merry Warner in sending instant messages. (Warner Dep. at 170, L.1-16).Chris Sarna told Merry Warner that if she went out with him her employment with Pioneer would benefit. (Warner Dep. at 172, L.15-25, at 173, L.1-10). Merry Warner was promoted to Office Manager in December 2007 and given a raise. (Warner Dep. at 173, L.11-14). Merry Warner was never disciplined in any way while employed at Pioneer. (Warner Dep. at 175, L.9-12). Merry Warner was never advised that she was not meeting the expectations of her employment at Pioneer. (Warner Dep. at 175, L.13-16).

### III. ARGUMENT

    A.    **Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This Rule permits the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986).

In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence nor the credibility of witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-51, 106 S. Ct. at 2511(1986).

Substantive law determines which facts are material that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R. Civ. P. 56(c).

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact from the evidence of record. *Schroeder v. Barth, Inc.*, 969 F.2d 421, 423 (7th Cir. 1992). If the Defendant meets its burden, Plaintiff then must go beyond the pleadings and present adequate, specific facts which show that a genuine issue exists. *Celotex*, 477 U.S. 317, 324 (1986). Plaintiff must do more than create a mere "colorable" factual dispute to defeat summary judgment. The disputed facts must be material, i.e., outcome determinative. *Anderson*, 477 U.S. 242, 248-249 (1986).

However, the court in considering a summary judgment motion, must draw all reasonable inferences "in the light most favorable" to the Plaintiff, and must resolve any doubt against the moving party. *Lloyd v. Bridgeport Brass Corp.*, 811 F. Supp. 401 (S.D. Ind. 1993). If a reasonable fact

finder could find for Plaintiff, summary judgment is inappropriate. *Lloyd*, 811 F.Supp. at 404; *Shields Enters, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). The court may not make credibility determinations or decide which inferences to draw from the facts, as these are jobs for the fact finder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003). The non-movant does not have to match the movant witness for witness, nor persuade the court that his case is convincing, but only has to come forward with appropriate evidence demonstrating that there is a pending dispute of material fact. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**B.    Title VII - as to retaliatory discharge**

In Count II of Plaintiff's Complaint, Plaintiff alleges that her termination from employment was due to her complaints of sexual harassment.

Title VII of the Civil Rights Act of 1964 expressly prohibits retaliation by an employer:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment...*because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.*
(Emphasis added.).  42 U.S.C. 2000e-3(a).

Generally, in order to demonstrate that Pioneer retaliated against her, Warner must meet three criteria: (1) she engaged in protected expression; (2) she suffered an adverse employment action; and, (3) there is a causal connection between the protected expression and the adverse employment action. *Bell v. EPA,* 232 F.3d 546, 554 (7th Cir.2000); *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 518 (7th Cir.1996).

As U.S.C. 2000e-3(a) indicates, there are two different theories under which an employee may bring a claim for retaliation. The first claim centers around an employee who has "participated in any investigation, charge or complaint," whereas the second method is because an employee "opposed" the unlawful discrimination. To bring a claim for retaliation, an employee must have done something or said something that is protected under the law. Section 703(a), the anti-

retaliation provision of Title VII, is designed to work with the anti-discrimination provisions that make it unlawful to treat an employee differently, or harass an employee because of race, color, religion, sex or national origin. As our Supreme Court stated in *Burlington Northern and Fe Railway Company v. Sheila White*, 126 S. Ct.2405 (2006), "[the substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct."

  The conduct of Merry Warner which led to the termination of her employment was her complaints regarding Chris Sarna continuous requests asking her out on a date as well as pornographic e-mails which Merry Warner received. As set out in Plaintiff's Statement of Material Facts, Merry Warner documented on her 2008 calendar some of her complaints about Chris Sarna to Brent Schafer who was a Manager at Pioneer. The following facts set out in Plaintiff's Statement of general issues support this. On January 7, 2008 Merry Warner wrote on her calendar and told Chris "no way" as to his asking her out. (Warner Dep. at 132, L.16-17, Warner Dep. Exhibit 9). On January 22, 2008 Merry Warner noted on her calendar that she complained to Brent Schafer about Chris Sarna constantly asking her out on a date. (Warner Dep. at 133, L.18-24, Warner Dep. Exhibit 9). On May 28, 2008 Merry Warner complained again to Brent Schafer about Chris Sarna asking her out. (Warner Dep. at 150, L.8-15, Warner Dep. Exhibit 9). On August 20, 2008 Merry Warner complained to Brent Schafer about the e-mail she saw. (Warner Dep. at 160, L.2-9). On September 25, 2008 Merry Warner attempted to call Brent Schafer again but he was too busy too talk with her, which she noted on her calendar. (Warner Dep. at 163, L.13-23, Warner Dep. Exhibit 9) Merry Warner has documented her protected activity as to her complaints about sexual harassment.

  In addition, In order to succeed on a retaliation claim Warner does not need to prove that the sexual harassment was serious enough to constitute a Title VII violation, but that Warner subjectively felt she had been sexually harassed. *Saint Joseph Regional Medical Center, 544 F 3d 766,*

8

771 (7*th* Cir. 2008). The type of sexual harassment which would sufficient to create a claim for retaliation includes uninvited sexual solicitations and pornographic pictures. *Id. at 722.* Chris Sarna continuously asked Merry Warner out on a date while she was employed at Pioneer. (Warner Dep. at 132, L.7-15, at 130, L.1-9). Exhibit 9 of Warner Deposition is a calendar prepared by Merry Warner. (Warner Dep. at 128, L.22-25). On January 3, 2008 Merry Warner told Sonny Balser about Chris Sarna's behavior toward her. (Warner Dep. at 131, L.18-25). At least every other day and every weekend Chris Sarna would ask Merry Warner out on a date, which Merry Warner refused. (Warner Dep. at 132, L.1-15). On January 7, 2008 Merry Warner wrote on her calendar and told Chris "no way" as to his asking her out. (Warner Dep. at 132, L.16-17, Warner Dep. Exhibit 9). On January 15, 2008 Merry Warner noted on her calendar that Chris Sarna told her he wished he was her boyfriend. (Warner Dep. at 133, L.12-15, Warner Dep. Exhibit 9). Chris Sarna contacted Merry Warner every Friday to ask her out. (Warner Dep. at 134, L.18-19). Chris Sarna kept asking Merry Warner how her love life and sex life was. (Warner Dep. at 136, L. 16-17). On February 14, 2008 Chris Sarna told Merry Warner: " gee Mary I wish I could get into your pants. How's your love life. I hate my wife. I'm not happy. Come on, say you're going to come and see me this weekend and watch me play." (Warner Dep. at 136, L .7-10). In addition, Merry Warner testified that she received pornographic e-mails. Chris Sarna showed Warner an offensive cartoon about Barbie. (Warner Dep. at 18, L.2-10, Warner Dep. Exhibit 1-4). Merry Warner complained to Sonny Balser about Chris Sarna showing her the offensive e-mail. (Warner Dep. at 20, L.16-18). Merry Warner complained to Brent Schafer about the offensive e-mail. (Warner Dep. at 21, L.12-17). Merry Warner found additional offensive e-mails while employed at Pioneer. (Warner Dep. at 25, L.9-12, Warner Dep. Exhibit 2). Chris Sarna gave Merry Warner additional offensive e-mails. (Warner Dep. at 33, L.14, Warner Dep. Exhibit 1-4).

It is undisputed that Merry Warner's employment was terminated on October 17, 2008 this

9

constitutes an adverse employment action for a retaliation claim. *Id.*

Having established material facts with regard to Warner's complaints about Chris Sarna's sexual harassment and the adverse employment action taken by Pioneer, it is necessary for Warner to establish a casual connection between her statutory protected activity of her complaints about Chris Sarna's sexual harassment ant the termination of employment. Merry Warner made a notation on her calendar that the complaint to Brent Schafer, her supervisor at late as August 20, 2008 and September 25, 2008. Merry Warner's employment was terminated on October 17, 2008. Generally a month between complaints of sexual harassment and termination to create a casual connection for purposes of a retaliation claim. *Id.*

Having established a prima false claim for retaliation, Pioneer has the burden of showing that it would have made the same decision to terminate Warner's employment regardless of her complaints as to sexual harassment. Id. at 773-774. Pioneer does not address this issue in its Brief and has not specifically designated material evidence on this issue other than to provide a business reason that her termination was for poor performance.

Warner has designated the following evidence which create genuine fact as to whether Pioneer's reason for termination of Warner's untrue: There was no written warnings as to Merry Warner. (Schafer Dep. at 19, L.10-11). Pioneer has no written documentation as to Merry Warner's performance. (Schafer Dep. at 25, L.1-2). Merry Warner received a $1,000 bonus while employed at Pioneer. (Schafer Dep. at 29, L.5-13, at 30, L.19-25). Brent Schafer never disciplined Merry Warner. (Schafer Dep. at 36, L.24-25, at 37, L1-3). Merry Warner was never disciplined in any way while employed at Pioneer. (Warner Dep. at 175, L.9-12). Merry Warner was never advised that she was not meeting the expectations of her employment at Pioneer. (Warner Dep. at 175, L.13-16).

There are genuine issues of fact as to each element necessary to create a claim for retaliatory discharge and Pioneer's Motion For Summary Judgment must be denied as to this issue.

### C.  Title VII - hostile work environment

Count I of Plaintiff's Complaint sets out Plaintiff's claim under Title VII for hostile work environment. To establish a claim for hostile work environment Warner must demonstrate that a) she was subjected to unwelcome conduct of a sexual nature, b) the conduct was severe or persuasive enough to create a hostile work environment and c) there is a basis for employment liability.

In order to demonstrate that Warner was subject to unwelcome conduct it is sufficient to demonstrate the claimant refused the advances on harassment. *Benitez v American Standard Circuits, Inc., 678 F. Supp. 745, 756 (F.D. Ill. 2010)*. Merry Warner testified that Chris Sarna asked her out on a date on a continuos basis during her employment and each time she refused.

In order to establish the second element necessary for a hostile work environment claim it is necessary for Warner to demonstrate that the conduct was based on sex which was by motivated by sexual desire. *Id. at 757*. Merry Warner testified during her deposition that Chris Sarna continuously asking her out on a date was sexually motivated. For example on February 14, 2008 Chris Sarna told Merry Warner: " gee Mary I wish I could get into your pants. How's your love life. I.. Hate my wife. I'm not happy. Come on, say you're going to come and see me this weekend and watch me play." (Warner Dep at 136, L . 7-10).

The third element necessary to establish claim for hostile work environment is to demonstrate that the harassment was severe on persuasive as to alter the condition of her employment. The harassing conduct does not need to be both severe and persuasive. *Jackson v County of Racine, 476 F 3d 493, 499.* (7th Cir. 2007). Persuasive conduct such as taking an inappropriate interest in the employee's relationship with her marriage along with inappropriate sexual comments is sufficient to create hostile work environment. *Robinson v Sappington, 35, F 3d, 317, 330. (7th Cir. 2004)*.

In this case Chris Sarna continuously asked her out on a date and made other sexual

11

comments. This is sufficient to create a hostile work environment. As set out in the prior section, Chris Sarna took continuous interest as to her relationships with other men and wanted to establish a sexual relationship with her. In addition, Merry Warner received e-mails with pornographic images.

The fourth requirement for establishing a hostile work environment claim is employer liability. The employer's liability is strict if the harassing individual is the employee's supervisor and there was tangible employment action such as discharge. *Jackson v County of Racine, Supra at 501.* Since it is undisputed that Chris Sarna was Warner's supervisor and her employment was terminated, Pioneer's strictly liable for the hostile work environment created by Chris Sarna. This is further reinforced by the fact that Pioneer had no system for employees at Pioneer to complain about sexual harassment during the time that Merry Warner was employed and did not ever have an employee handbook. At the very least there are issues of fact as the negligence of Pioneer as to its lack of a system for employees to report sexual harassment. *Id.*

Pioneer in its Brief takes many pages to analyze the instant messages which had been saved on Pioneer's computer. It is clear from the deposition testimony of Chris Sarna and Brent Schafer as well as of Merry Warner that there was only one computer in the Osceola office and anyone could be at the computer and type instant messages. Both Chris Sarna and Brent Schafer conceded that during their deposition it was impossible to tell definitely who sent a message. Sonny Balser would pretend to be Merry Warner in sending instant messages. (Warner Dep. at 170, L.1-16). For this reason Merry Warner in the statement of material facts has designated the deposition testimony of Chris Sarna, Brent Schafer, and Merry Warner and their exhibits which create genuine issues of fact and do not believe the instant messages introduced by Pioneer are credible.

## CONCLUSION

For the foregoing reasons set out in this Brief, Plaintiff moves this court to deny

12

Defendant's Motion for Summary since these are issues of material fact with regard to Warner's claims for retaliation and for a hostile work environment.

Respectfully submitted,

/s/ Richard J. LaSalvia
Richard J. LaSalvia    (9814-71)
Attorney for Plaintiff
105 E. Jefferson Blvd., Suite 220
South Bend, Indiana 46601

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 31st day of January, 2011, a true and correct copy of the above and foregoing pleading or paper was served upon:

**Jere Humphrey**
**Wyland, Humphrey, Wagner**
**PO Box 158**
**Plymouth, IN 46563**

by E-mail.

/s/ Richard J. LaSalvia