UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MERRY WARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:10-CV-023 |
| | ) | |
| PIONEER AUTO SALES AND | ) | |
| LEASING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Merry Warner ("Warner") worked as a secretary and office manager for Pioneer Auto

Sales and Leasing, Inc. ("Pioneer"), from August 25, 2007, to October 17, 2008. During her

employment, she exchanged instant messages with a co-employee, Chris Sarna, who worked at a

different location. The content of these messages ranged from normal discussion of work issues,

to sexually suggestive topics. Also, at some point during her employment, Warner noticed some

vulgar emails on her work computer, which she claimed were sent by Sarna. She asserts that

these emails, along with Sarna's alleged efforts to ask her out on a date, rose to the level of

sexual harassment and a hostile work environment, and she was retaliated against for attempting

to complain to her boss. This Court does not find her arguments compelling nor the facts alleged

sufficient to survive summary judgment. Thus, for the reasons discussed below, summary

judgment is granted to Pioneer on all claims.

## I.    PROCEDURE

On January 20, 2010, plaintiff, Warner filed a complaint pursuant to 42 U.S.C. section

2000e-3(a) alleging that her termination by Pioneer was a retaliatory discharge, and that Pioneer

subjected Warner to a hostile work environment. Pioneer maintains that Warner was not

sexually harassed or subjected to a hostile work environment, and that evidence supporting her claims was fabricated after the fact.

On March 19, 2010, the parties consented to have this case adjudicated by the magistrate judge. On December 10, 2010, Pioneer, filed a motion for summary judgment against Warner on both her claims. On January 31, 2011, Warner filed a response in opposition. On February 8, 2011, Pioneer filed a reply. This Court now enters a ruling on Pioneer's motion for summary judgment pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## II.   FACTS

The following facts are taken from the parties' briefs and are uncontested. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

Pioneer is in the business of selling and leasing cars. Its main store is in Plymouth, Indiana but also has satellite stores in Valparaiso, Warsaw, and Osceola, Indiana. Warner was hired on August 25, 2007, as secretary/office manager at the Osceola location until her termination on October 17, 2008. Brent Schafer ("Schafer"), Vice President and manager of all offices, is in charge of Chris Sarna ("Sarna"), assistant manager of the Plymouth office. Pioneer did not have an employee handbook or written policies during the relevant years of 2007 and 2008 as to the reporting of sexual harassment. Warner's supervisors never made documentation of her performance or reprimanded her.

The Osceola office had only one computer, and it was located on Warner's desk. Warner primarily used the computer, but another employee also used it periodically. Because Warner and Sarna worked at different locations, they communicated by sending instant messages via

office computers.  Many of the instant messages were flirtatious and involved sexually

suggestive topics. Warner agrees that she authored some instant messages, such as "[t]he people

I work with they are super." Doc. No. 14-33 at 2.  She also acknowledges that she referred to

Sarna as "Big Guy." Doc. No. 14-33 at 4; Doc. No. 14-34 at 1. On another occasion, she

admitting to stating, "[h]ey I brought brownies for the OC little boys today!–I'll make some for

you tomorrow–make sure someone can bring them to you–or of course I can deliver

them—Merry." Doc. No. 14-34 at 1.  Numerous instant messages of this sort, as well as more

amorous ones, were sent from Warner's computer to Sarna for a period of approximately eleven

of her fourteen months of employment with Pioneer.  Warner's explanation as to who authored

the messages essentially is that if she does not recall sending a certain message, it must have

been sent by someone else who used the computer.

At some point after beginning her employment with Pioneer, Warner discovered four

comedic, but crude emails on her work computer.  Email records indicate that they were

originally sent from the Osceola computer in March, 2007, five months before Warner began

work at Pioneer.  Prior to Warner's employment, Schafer "scrubbed" the computer to remove

unnecessary files but evidently missed these emails.  On June 19, 2008, within a four-minute

period, all four emails were sent from the Osceola computer to Warner's personal email address.

Warner proffered a calendar that contained markings related to customer payments,

personal appointments, instances of misconduct, attempts to complain, and random comments

such as "Hate Saturdays." Doc. No. 20-4.  She only provided copies of January, February, May,

August, and September, 2008.  She offers no explanation as to why certain months were omitted

and does not state who had access to the calendar.

Warner was terminated on October 17, 2008. According to Pioneer, Warner was terminated solely due to her "inability to adapt to the upgrade in the software which was changed in June, 2008." Doc. No. 15 at 2. Pioneer states that it "changed the software and went to a web based system where the data was stored off-line and [Warner] could not master the tasks. The other offices had no trouble." Doc. No. 15 at 2. At a minimum, this was a four month period to adapt to the software change. Pioneer's technology specialist stated that he instructed Warner on approximately thirty different occasions on how to use the system. Doc. No. 14-22 at 1-2. As secretary and office manager, correct usage of the software system is an essential function of her job.

Warner filed a charge with the EEOC on or about December 23, 2008, complaining that she was subjected to sexual harassment and retaliated against. Doc. No. 1 at 2. On or about October 27, 2009, less than ninety days prior to the filing of her complaint, the EEOC issued Warner a notice of right to sue. Doc. No. 1 at 2. On January 20, 2010, Warner filed suit against Pioneer.

III.    ANALYSIS

A.      Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable

inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986);

King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion

for summary judgment, the nonmoving party cannot rest on the mere allegations or denials

contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to

show the existence of each element of its case on which it will bear the burden at trial. Celotex

v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th

Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Servs. Co., 391

U.S. 253, 289 (1968)).

> B.      Hostile Work Environment

Warner's first claim is that she was subjected to a hostile work environment during her

employment at Pioneer. To establish a *prima facie* case of sexual harassment under a hostile

work environment theory, Warner must demonstrate: (1) she was subjected to unwelcome

sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or

physical conduct of a sexual nature; (2) the harassment was based on her sex; (3) the conduct

was severe or pervasive enough to create a hostile working environment; and (4) there is a basis

for employer liability. Roby v. CWI, Inc., 579 F.3d 779, 784 (7th Cir. 2009); Hall v. Bodine

Elec. Co., 276 F.3d 345, 354-55 (7th Cir. 2002); Parkins v. Civil Constructors of Ill., Inc., 163

F.3d 1027, 1032 (7th Cir. 1998).

>> 1.      Warner was not subjected to unwelcome sexual harassment because the content of her instant messages shows that she, not Sarna, made sexual advances recurrently.

"The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986). Warner argues that she meets the "unwelcome advance" element because "Chris Sarna asked her out on a date on a continuous basis during her employment and each time she refused." Doc. No. 20 at 11. She cites to Benitez v. Am. Standard Circuits, Inc., 678 F. Supp. 2d 745, 756 (N.D. Ill. 2010), to support this proposition. In Benitez, the plaintiffs both stated that they refused sexual advances from a co-worker; however, the court also noted that "[a] plaintiff's words, deeds, and deportment can cast light on whether her coworkers' treatment of her was unwelcome and should have been perceived as such by them and their supervisors." Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d 1007, 1011 (7th Cir. 1994). Importantly, "Title VII does not guarantee that an employee will experience a certain comfort level at work, only that she not experience an abusive, hostile work environment. To be actionable as a hostile work environment within the context of Title VII's anti-discrimination provisions, the complained of conduct must be extreme to the point of creating an abusive working environment." Hine v. Extremity Imaging Partners, Inc., No. 1:09-cv-416, 2011 WL 765853 (S.D. Ind. Feb. 25, 2011).

Here, Warner does not allege that Sarna made physical contact, specifically requested sexual favors, or made sexist comments. She only claims that refusing Sarna's requests to go on a date is sufficient to prove that his advances were unwanted. In support of her claim, Warner has produced a calendar that she alleges shows that she complained of sexual harassment. However, the calendar is not as clear as Warner represents. For example, the entry in the calendar for the date that Warner says she officially complained of sexual harassment says only this, "Told B Shaffer he said would TT [talk to] Chris [Sarna]." Doc. No. 20-4, at 1. The

6

remainder of the calendar includes entries of alleged advances made by Sarna toward Warner. See Id.

While the calendar states that Warner did not welcome Sarna's advances, the log of instant messages paints a different picture. The numerous instant messages sent from Warner to Sarna ranged from business-related ("GOOD MORNING CHRIS—HOW IS THE NEW GIRL IN WARSAW WORKING OUT—DO YOU KNOW? IS SHE PRETTY?—I'M JUST COURIOUS. MERRY.") to mildly flirtatious ("you ROCK Chris! You always say the right thing!") to overtly sexual ("YOU MEAN ROUGH SEX! I THOUGHT GUYS LIKE IT ROUGH!"; "i asked marybeth about her logo Who is the best!? I said the best at what—I should have said best looking—best at sales----best butttttt—best a doing B.J.'s!! ha ha–Merry."; "YES IT'S in . . . sock it to me baby---------------babbbbbbbbbbbbbbyyyy . . . SIILLLLLLLLLLLYYYY MEEEEEEEEE—IT SOUNDED FUNNY ITS IN!!!"; "DID YOU EVER HAVE A 3 SOME?? WOW LISTEN 2 ME getting real personal—It was FANTASTIC!–."; and "I better stop we have to work—can;'t have a hard on! :)"). See Doc. Nos. 14-7, 8, 10, 11, 12, 13.

A review of the instant messages sent by Warner show several important facts that show that Warner's work environment was not hostile. First, Warner sent the messages. A review of the instant message logs indicates that Warner more often initiated conversations with Sarna, more often made flirtatious comments, and more often made personal or sexual comments. Sarna's responses were often short ("LOL," for example) and only given in response to risque comments made by Warner. Id.

Second, despite what her calendar indicates, Warner was open to flirtations and often

asked to meet with Sarna outside of work, particularly to see his band. See Doc. No. 14-7 at 2 (For example, "ARE YOU PLAYING THIS WEEK-END i NEED TO HEAR YOUR BAND–."). On May 21, 2008, Warner asked Sarna where his band was playing, only two days before Warner says that Sarna asked her to meet him at Blue Chip Casino. Doc. No. 14-9 at 2, and 20-4 at 3. If Warner was not open to advances by Sarna, she certainly never communicated that to him in their instant messages. In fact, the instant messages indicate that she was not only a willing participant, but often the instigator of flirtations and sexual comments.

Finally, Warner's calendar is insufficient to show that she made any complaints to her supervisor about Sarna's conduct. It only contains vague references to conversations with her supervisor about Sarna. It does not describe the contents of those conversations and it does not show that she ever successfully communicated, "clearly and directly", with her supervisor that she received unwelcome advances. See Montgomery v. Am. Airlines, 626 F.3d 382, 392 (7th Cir. 2010). In the absence of stronger evidence, it is unimaginable to believe how a jury would find that the alleged harassment was unwelcome and created a hostile work environment. She does not produce sufficient evidence to show that she ever felt that her interactions with Sarna were hostile. As a result, Warner was not subjected to unwelcome sexual harassment.

        2.     Warner has failed to show that she was exposed to disadvantageous terms or conditions of employment to which men are not exposed.

Regarding the second element, Warner must establish that Sarna's conduct was "because of" her sex. 42 U.S.C. § 2000e-2(a)(1). See Spearman v. Ford Motor Co., 231 F.3d 1080, 1084 (7th Cir. 2000). The United Supreme Court has "never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue, Title VII's text

8

indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of

employment to which members of the other sex are not exposed.'" Oncale v. Sundowner

Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17,

25 (1993) (Ginsburg, J., concurring)).  Warner points to one statement allegedly made by Sarna

on February 14, 2008, to establish that she was harassed because of her sex.  She claims that

Sarna said to her, "gee Mary I wish I could get into your pants.  How's your love life.  I hate my

wife.  I'm not happy.  Come on, say you're going to come and see me this weekend and watch

me play."  The first sentence may well contain a sexual reference, but it does not expose Warner

to disadvantageous terms or conditions of employment to which men at Pioneer are not

subjected.  Even if Sarna actually made this statement, it is not enough to meet the second

element.

> 3.     Warner has not shown that a reasonable person would find that Sarna's
>        alleged conduct and the vulgar emails found on her work computer to be
>        severe or pervasive enough to create a hostile work environment.

Warner asserts that Sarna's conduct and the alleged pornographic emails found her

computer created a hostile work environment.  In evaluating whether the conduct was severe or

pervasive enough to create a hostile working environment, this Court must examine "all the

circumstances including the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interfered with [Warner's] work performance."  Smith v. N.E. Ill. Univ., 388 F.3d 559, 566 (7th

Cir. 2004) (quoting Russell v. Bd. of Trs. of Univ. of Ill. at Chicago, 243 F.3d 336, 343 (7th Cir.

2001)).  "Moreover, a hostile work environment is one that is 'both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one that the victim in

fact did perceive to be so.'" Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463 (7th Cir. 2002)

(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)). A workplace is objectively

offensive when "a reasonable person would find [it] hostile or abusive." Rogers v. City of

Chicago, 320 F.3d 748, 752 (7th Cir. 2003) (quoting Cerros v. Steel Technologies, Inc., 288 F.3d

1040, 1045 (7th Cir. 2002)). This is a difficult thing to prove, and drawing the line is not always

easy. Id. See Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997). Importantly,

"[n]ot every unpleasant workplace is a hostile environment. The occasional vulgar banter,

tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor

offensive enough to be actionable." Rogers, 320 F.3d at 748; Baskerville v. Culligan Int'l Co.,

50 F.3d 428, 430-31 (7th Cir. 1995)

Warner again asserts that Sarna's interest in pursuing a relationship with her rises to the

level of conduct severe or pervasive enough to alter the terms and conditions of her work. This

Court is of the opinion, however, that Sarna's conduct in no way interfered with Warner's work

performance. Sarna never threatened Warner nor said anything a reasonable jury would find to

be objectively offensive. In actuality, Warner contacted Sarna more frequently, and it is likely

that a jury would find the content of her instant messages to be more lascivious. Reviewing the

instant messages she sent, it hardly seems possible that Warner could subjectively perceive

Pioneer to be a hostile or abusive workplace. To conclude otherwise truly would allow the pot to

call the kettle black.

Warner also claims that the pornographic emails on her computer created a hostile work

environment. Some of the emails could perhaps be viewed as pornographic; however, they were

never actually sent to Warner's email account. The emails were originally sent by a previous

10

employee five months prior to Warner's employment. After this employee left Pioneer, Schafer

"scrubbed" the computer to remove files that were unrelated to the business. Schafer admits he

must have missed the files when preparing the computer for Warner. This Court finds no reason

to question this uncontroverted testimony, and is of the opinion that Schafer attempted, in good

faith, to remove all unnecessary files.

4.      Warner has failed to show that Sarna is her supervisor, or in the
        alternative, that Pioneer was negligent in discovering or remedying
        Sarna's supposed harassment.

The fourth element required to establish a hostile work environment claim is the

existence of a basis for employer liability. Roby, 579 F.3d at 784. The standard for employer

liability depends on whether the alleged harasser is the plaintiff's supervisor or a coworker.

Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 500 (7th Cir. 2004). See, e.g., Faragher, 524

U.S. at 807-08. "Harassment by a supervisor of the plaintiff triggers strict liability, subject to the

possibility of an affirmative defense in the event the plaintiff suffered no tangible employment

action." Phelan v. Cook Cnty., 463 F.3d 773, 783 (7th Cir. 2006) (quoting Rhodes, 359 F.3d at

505. "Conversely, an employer may be found liable for a hostile work environment created by

an employee who was not the plaintiff's supervisor only where the plaintiff proves that the

employer has been negligent either in discovering or remedying the harassment." Rhodes, 359

F.3d at 505-06 (internal quotations omitted).

The Seventh Circuit has defined a supervisor as "someone with the power to directly

affect the terms and conditions of the plaintiff's employment." Rhodes, 359 F.3d at 506; Hall,

276 F.3d at 355. "'Supervisor' is a legal term of art for Title VII purposes, and an employee

merely having authority to oversee aspects of another employee's job performance does not

11

qualify as a supervisor in the Title VII context. Id. ("[T]he fact that an employer authorized one employee to oversee aspects of another employee's job performance does not establish a Title VII supervisory relationship."). If Sarna was authorized to promote, demote, transfer Warner, or remedy the situation, he would be considered to be a supervisor. See Rhodes, 359 F.3d at 506. If so, Pioneer would be strictly liable for his conduct. This, however, is not the case.

Here, Warner has not even established that Sarna has authority to oversee her job performance, let alone the authority to alter the terms and conditions of her employment. Undisputed evidence shows that Schafer was the only supervisor with the authority to hire or fire employees. Accordingly, because Warner cannot establish that Sarna exercised supervisory authority over her under Title VII, she is entitled to reach a jury only if she pointed to competent evidence that Pioneer was negligent either in discovering or remedying the alleged harassment directed at her. See Rhodes, 359 F.3d at 506; Hall, 276 F.3d at 356.

Pioneer "will not be liable for the hostile environment absent proof that it failed to take appropriate remedial measures once apprised of the harassment." Rhodes, 359 F.3d at 506 (quoting Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000)). Generally, an employer is not considered to be apprised of the harassment unless the employee makes a concerted effort to inform the employer that a problem exists. Rhodes, 359 F.3d at 506; Silk v. City of Chicago, 194 F.3d 788, 807 (7th Cir. 1999) (internal quotation omitted). However, an employer could be charged with constructive notice where the harassment is sufficiently obvious. Rhodes, 359 F.3d at 507; Mason v. Southern Ill. Univ., 233 F.3d 1036, 1046, n.8 (7th Cir. 2000); Zimmerman v. Cook Cnty. Sheriff's Dept., 96 F.3d 1017, 1018 (7th Cir. 1996). Regardless, as noted in Rhodes, the law against sexual harassment is not self-enforcing, and

"[w]ithout employer knowledge of harassing conduct, the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII." Rhodes, 359 F.3d at 507. See Cooke v. Stefani Mgmt. Servs., Inc., 250 F.3d 564, 569 (7th Cir. 2001); Perry, 126 F.3d at 569.

Here, Warner has failed to demonstrate that the alleged harassment was sufficiently obvious or that Schafer was actually informed of the harassing conduct. Warner has not provided actual evidence that Schafer was aware of the specific incidents of harassment noted on her calendar. Again, Warner represents the notations on the calendar to be indisputable proof of a sexual harassment complaint. However, at best, the calendar only shows that Schafer offered to talk to Sarna, though the subject of that conversation is not mentioned in the calendar. See Doc. No. 20-4 at 1. However, there is no mention of a formal complaint, or even that Warner told Schafer that she felt uncomfortable at work because of Sarna's alleged advances. As an employer, Pioneer "need not divine complaints from the ether, guessing at the subjective suspicions of employees." Montgomery, 626 F.3d at 392. Warner was required to "at least report—clearly and directly—nonobvious policy violations troubling [her] so that supervisors may intervene." Id. Warner has not provided evidence that she made an effort to clearly and directly report Sarna's policy violations to Schafer. Warner has also failed to show that the harassment was sufficiently obvious that Schafer was negligent in taking remedial measures. Thus, Pioneer cannot be charged as having constructive notice or actual notice.

Warner's alternative argument that Pioneer is liable because it has no system for employees to complain about sexual harassment is also without merit. If, as Warner contends, Pioneer has no channel or point person to direct complaints, she, like any other plaintiff, still

"cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." Hall, 276 F.3d at 356 (quoting Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1035 (7th Cir. 1998)). Warner has not presented evidence that Pioneer had enough information to even be suspicious that she was being subjected to a hostile work environment.

  C.  Retaliatory Discharge

  Pioneer argues that Warner failed to establish the elements necessary to maintain her retaliation claim. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. A plaintiff bringing an employment discrimination claim under Title VII may prove her claim using either or both of the "direct" and "indirect" methods of proof. See Hudson v. Chicago Transit Authority, 375 F.3d 552, 560 (7th Cir. 2004); Cerutti v. BASF Corp., 349 F.3d 1055, 1060-61 (7th Cir. 2003). Warner provides an unorganized account of the alleged instances of sexual harassment and never states precisely whether she is establishing her *prima facie* case under the direct or indirect method. In her argument section, she lists the criteria for the direct method but cites to two unrelated cases, Bell v. EPA, 232 F.3d 546, 554 (7th Cir. 2000) and Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 518 (7th Cir. 1996), for support. Bell and Pasqua both involved a retaliation complaint but each was analyzed under the indirect, burden-shifting method provided for by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

1.      Direct Method

This Court will first address Warner's retaliation claim as applied to the direct method. In order to successfully establish retaliation under the direct method of proof, Warner must "[1] offer evidence that [she] engaged in a statutorily protected activity, [2] that the defendants subjected [her] to an adverse employment action and [3] that a causal connection exists between the two events." Gates v. Caterpillar, 513 F.3d 680, 686 (7th Cir. 2008); Treadwell v. Office of Ill. Sec'y of State, 455 F.3d 778, 781 (7th Cir. 2006). Failure to show any one of these required elements is fatal to plaintiff's claim. Batchelor v. Merck & Co., Inc., 651 F. Supp. 2d 818, 836 (N.D. Ind. 2008).

Because Pioneer does not contest that Warner was subject to an adverse employment action when she was terminated, the Court must only determine whether a causal connection existed between the alleged protected activity and the adverse employment action. "A causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision." Batchelor, 651 F. Supp. 2d at 837 (quoting Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005). Additionally, "[a] motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." Id.

Warner claims that her January 22, 2008, May 28, 2008, August 20, 2008, and September 25, 2008 notations on her calendar show that she complained the Schafer. The calendar indicates that the alleged August complaint was related to an email Warner saw. She does not articulate, however, what the September complaint concerned. Warner claims that she attempted to call Schafer, but he was too busy to talk with her. Notably, Warner never provided emails

15

sent from Sarna to substantiate these claims.

Presumably relying on Magyar v. Saint Joseph Regional Medical Center, 544 F.3d 766, 772 (7th Cir. 2008), Warner argues that "[g]enerally a month between complaints of sexual harassment and termination . . . create a causal connection for purposes of a retaliation claim." Doc. No. 20 at 10. In Magyar, however, the plaintiff made specific, identifiable complaints that were corroborated. See Magyar, 544 F.3d at 772. In the instant case, Warner did not file a charge with the EEOC or a law suit for at least two months following her discharge. If, for example, Warner filed a charge before termination, it would be an identifiable instance to establish a causal connection; however, "suspicious timing alone is almost always insufficient to survive summary judgment." Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 675 (7th Cir. 2011); Leonard, 606 F.3d at 432-33; Turner v. Saloon, Ltd., 595 F.3d 679, 687 (7th Cir. 2010). "When a retaliation claim is based on suspicious timing, 'the order of events is even more important than the time between them; the theory doesn't work if the retaliatory act precedes the protected activity.'" Leitgen, 630 F.3d at 676 (quoting Leonard v. E. Ill. Univ., 606 F.3d 428, 432 (7th Cir. 2010)).

Here, Warner made no identifiable complaints to management, was terminated, then nine weeks later filed her charge with the EEOC. The alleged retaliatory act by Pioneer preceded protected activity; thus, while "[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, . . . it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." Tomanovich, 457 F.3d at 665 (quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004)). Warner has failed to produce evidence that would allow a rational trier of fact to

conclude that she was terminated by Pioneer because of her engagement in statutorily protected activity.

2.      Indirect Method

Warner does not make an argument under the indirect, burden-shifting method, but this Court will address it nonetheless. The familiar McDonnell-Douglas approach requires a plaintiff to offer evidence that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other, similarly situated employees, who were not members of the protected class, were treated more favorably. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Egonmwan v. Cook Cnty. Sheriff's Dept., 602 F.3d 845, 850 (7th Cir. 2010); Tomanovich, 457 F.3d at 666; Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012 (7th Cir. 2000). If the employee offers evidence supporting a *prima facie* case, a presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the adverse employment action. McDonnell-Douglas Corp. v. Green, 411 U.S. at 802 . If the employer provides such a reason, the burden then shifts back to the employee to present evidence that would allow a jury to find that the employer's stated reason is a false pretext, a lie, from which a jury might infer that the real reason was unlawful discrimination. Hill v. Potter, 625 F.3d 998, 1001 (7th Cir. 2010); Egonmwan, 602 F.3d at 850. There is no dispute as to the first and third elements. Warner is a woman and suffered an adverse employment action when Pioneer terminated her on October 17, 2008. Thus, this Court will address only the second and fourth elements.

b.      Warner failed to show that she was meeting Pioneer's legitimate

job expectations.

Warner asserts that her performance met Pioneer's legitimate job expectations, especially because she received a raise and a $1,000 bonus while working at Pioneer. When a court "evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time of [her] termination." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002) (internal quotations omitted). The raise, however, was automatic after the ninety day probationary period. Warner does not dispute this fact. Moreover, "[t]he bonuses [were] based upon the sales of the store, not the performance of the office person." Doc. No. 15 at 20. Warner is not a sales person but received a bonus simply because she was employed at the Osceola store. There is no indication that Warner was reprimanded, but a considerable amount of evidence concerning Warner's inability to adapt to the new software system (over nearly a five month period) shows that at the time of termination, Warner was not meeting Pioneer's legitimate job expectations. See Doc. Nos. 14-22 at 1-2; 14-1 at 2-3

        c.       Warner failed to provide evidence that a similarly situated employee received more favorable treatment.

Even if the evidence showed that Warner was meeting Pioneer's legitimate job expectations, her claim would still fail the fourth element that a similarly situated employee was treated more favorably. For the final element of the *prima facie* case Warner must demonstrate that another employee is "similarly situated" to her by "show[ing] that there is someone who is directly comparable . . . in all material respects." Jean Baptiste, 442 F. Supp. 2d at 667 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)); see also Greer v. Bd. of

18

Educ. of Chi., Ill., 267 F.3d 723, 728 (7th Cir. 2001). To determine whether two employees are

similarly situated, "a court must look at all relevant factors, the number of which depends on the

context of the case." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir.2000).

Warner makes no mention whatsoever of a similarly situated employee. Additionally,

she provides no evidence that any other office staff, that failed to adapt to the new computer

system, were retained. As a result, Warner cannot establish the necessary fourth element.

Because Warner's claim under the indirect method fails, this Court has no need to determine

whether Pioneer's justification is pretextual. However, even if Warner provided such evidence,

she fails to offer evidence that Pioneer's justification is pretextual. Pioneer's affirmative

evidence of a non-discriminatory reason for her termination, that she could not adapt to a new

computer system, remains uncontradicted.

D.    Age Discrimination

In her complaint, Warner alleges that Pioneer terminated her due to her age in violation

of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*

(2006). The ADEA makes it unlawful for an employer to discriminate against an employee

"because of" the employee's age, language that the Supreme Court has interpreted to mean that a

plaintiff must show her age was the but-for cause of the challenged employment action. 29

U.S.C. § 623(a); Gross v. FBL Fin. Servs., Inc., --- U.S. ----, ---- - ----, 129 S. Ct. 2343, 2350-52,

174 L. Ed. 2d 119 (2009); Mach v. Will Cnty. Sheriff, 580 F.3d 495, 498 (7th Cir. 2009).

However, "[i]t is not the court's obligation to research and construct a party's argument for her."

Id. See also 330 W. Hubbard Restaurant Corp. v. United States, 203 F.3d 990, 997 (7th Cir.

2000) ("A party's failure to address or develop a claim in its opening brief constitutes a waiver

of that claim, for it is not the obligation of this court to research and construct the legal arguments open to the parties. . . .") (internal citations and quotations omitted).  Because Warner has failed to present any argument attempting to establish her ADEA claim through either of these methods, she has waived her ADEA claim.

## III.   CONCLUSION

Summary judgment is the "put up or shut up" moment in the life of the case, and Warner has failed to proffer evidence that would lead a rational trier of fact to find in her favor on the hostile work environment, retaliation, and age discrimination claims.  See Everroad v. Scott Truck Systems, Inc., 604 F.3d 471, 476 (7th Cir. 2010).  Warner has not shown sufficient evidence that a reasonable fact-finder could find in her favor that she suffered sexual harassment because of a hostile work environment.  Further, Warner has not produced sufficient evidence such that a reasonable fact-finder could determine that Pioneer retaliated because of her sexual harassment complaints.  Finally, Warner has waived her age discrimination claim for failing to present an argument in her brief.  Accordingly, this Court finds that Warner has not met her burden and **GRANTS** Pioneer's motion for summary judgment..

**SO ORDERED**

Dated this 14th Day of April, 2011.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge

20